J-S38006-25                    2026 PA Super 24

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                             :            PENNSYLVANIA
                                             :
             v.                         :
                                             :
                                             :
TYREESE HARRIS                     :
                                             :
            Appellant                 :       No. 3348 EDA 2024

Appeal from the Judgment of Sentence Entered November 25, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0000105-2023

BEFORE: McLAUGHLIN, J., KING, J., and BENDER, P.J.E.

OPINION BY McLAUGHLIN, J.:                     **FILED FEBRUARY 9, 2026**

Tyreese Harris appeals from the judgment of sentence entered following his guilty plea to third-degree murder, criminal conspiracy, persons not to possess firearms, and firearms not to be carried without a license.[1] He challenges the discretionary aspects of his sentence. We affirm.

In September 2024, Harris pleaded guilty to the above-referenced offenses. As part of the plea deal, the parties agreed that Harris's sentence would be "no more than 22 to 44 years in the aggregate." N.T., Sept. 16, 2024, at 4.

At a November 2024 sentencing hearing, Harris submitted a mitigation report, which the court read. N.T., Nov. 25, 2024, at 4, 8. The court noted that Harris's prior record score was a five. *Id.* at 4-6. It stated that the

---

[1] 18 Pa.C.S.A. §§ 2502(c), 903(a)(1), 6105(a)(1), and 6106(a)(1), respectively.

sentencing guidelines' standard, minimum sentence ranges for third-degree murder and conspiracy were 210 months to the statutory maximum; for persons not to possess firearms, they were 72 to 90 months' incarceration; and for firearms not to be carried without a license, they were 48 to 60 months' incarceration. *Id.* at 4, 7-8. Harris's counsel requested a mitigated sentence of 10 to 20 years' incarceration. He argued that Harris's parents "effectively abandoned" him and he had experienced "a really disrupted childhood" in which he was separated from his siblings. *Id.* at 10. Counsel further stated that Harris was the victim of "abuse within his family" and he experienced "a lot of really extreme violence in his childhood and young adulthood." *Id.* at 11. Counsel noted that Harris suffers from depression and anxiety, had struggled in school, and was "hypervigil[ant]," which "is overperceiving or over-evaluating a threat or believing there is a threat where there is not." *Id.* at 12. He further pointed out that Harris had been "incarcerated for a very long period of time," for much of which he was "more or less" in solitary confinement. *Id.* at 15.

The court then heard from the victim's sister and from Harris, who apologized for his actions and spoke about his childhood and incarceration. *Id.* at 30-42. The court stated that it would take into account the information presented at the plea and sentencing hearings and in exhibits submitted in preparation of the sentencing hearing, including the presentence and mitigation reports. *Id.* at 42-43. The court stated that there were "mitigating circumstances in th[e] case," noting Harris "had a very deprived childhood"

and "suffer[ed] greatly." *Id.* at 43-44. The court noted Harris had been exposed to violence and had "mental health disorders and a low IQ." *Id.* at 44. The court also found that there were aggravating factors. It noted that Harris committed the crime while on state parole for a robbery conviction and that he had had 57 misconducts during his prior incarceration. *Id.* The court also pointed out that the "facts in this case . . . would not be a typical third-degree murder," stating "[s]omeone shooting someone through the window of a car in the back is not a garden-variety third-degree murder case." *Id.* It further noted that at the time of the crime, Harris was on parole, out past curfew, and drove around with a gun in his car. *Id.*

The court next considered the statutory factors. Regarding the need to protect the public, the court noted that Harris expressed "what appear[ed] to be genuine remorse," but "based on his conduct throughout the history of what [the court could] see from the reports here, he does appear to be a danger to the community." *Id.* at 44-45. The court then discussed the gravity of the offense in relation to its impact on the victim and the community. It noted it was a homicide and the "victim's life is over," and that the crime had affected the victim's family, who "suffered and continue[d] to suffer greatly because of [Harris's] outrageous conduct." *Id.* at 45. It also stated that it had taken Harris's rehabilitative needs into consideration. *Id.*

The court concluded that it "c[ould] live with the negotiated cap that was part of the sentencing agreement but [it could not] . . . see any reason to go below that cap." *Id.* It stated going below the cap would be "manifestly

- 3 -

inappropriate given the facts of this case." *Id.* The Court imposed a sentence of 17 to 34 years' incarceration for third-degree murder and a consecutive term of 5 to 10 years' incarceration for possession of a firearm by a prohibited person. The court also imposed concurrent prison sentences of 17 to 34 years' incarceration for criminal conspiracy and three and a half to seven years for carrying a firearm without a license. The aggregate sentence was 22 to 44 years' incarceration—the cap agreed to by the parties. Harris filed a post-sentence motion, which the court denied. Harris appealed.

Harris raises the following issue:

> Did the lower court abuse its discretion by imposing an excessive and unreasonable sentence without adequate consideration of Tyreese Harris' background, trauma, and rehabilitative needs, as required under 42 Pa.C.S. § 9721(b) of the Sentencing Code?

Harris's Br. at 2.

Harris argues the trial court abused its discretion in sentencing him. He maintains that his agreement to a capped sentence of 22 to 44 years' incarceration did not mean the court "could then simply impose the capped sentence without adequate consideration of Mr. Harris' substantial mitigation." Harris's Br. at 10. Harris claims that "[d]iscretion remained with the court to impose a sentence within the cap after proper consideration of the required sentencing factors under 42 Pa.C.S. § 9721(b), which included consideration of Harris' rehabilitative needs." *Id.* at 11-12. He maintains that his "mitigation mandated a sentence well below 22 to 44 years of confinement." *Id.* at 10.

The trial court first concluded that Harris could not challenge the discretionary aspects of his sentence because as part of the plea agreement he agreed that the maximum sentence he could receive would be 22 to 44 years' incarceration, and the court imposed that sentence. Trial Ct. Op., filed Mar. 11, 2025, at 3-4. We disagree.

If a defendant has pleaded guilty pursuant to a plea agreement, whether the defendant may challenge a discretionary aspect of the sentence "depends upon the actual terms of the plea bargain, specifically, to what degree a sentence agreement has been reached." *Commonwealth v. Dalberto*, 648 A.2d 16, 18 (Pa.Super. 1994). A defendant may enter an open or a negotiated guilty plea. An open guilty plea "is one in which there is no negotiated sentence." *Commonwealth v. Tirado*, 870 A.2d 362, 363 n.1 (Pa.Super. 2005). In other words, if "there have been no sentencing restrictions in a plea agreement, the entry of a guilty plea will not preclude a challenge to the discretionary aspects of sentencing." *Dalberto*, 648 A.2d at 20. However, if a plea agreement involves an agreement to a particular penalty, "there is no authority to permit a challenge to" the imposition of that penalty. *Id.* (citation omitted).[2]

_____

[2] *See also Commonwealth v. Brown*, 982 A.2d 1017, 1019 (Pa.Super. 2009) ("where a defendant pleads guilty pursuant to a plea agreement specifying particular penalties, the defendant may not seek a discretionary appeal relating to those agreed-upon penalties." (citing *Dalberto*, 648 A.2d at 20).

There are also "hybrid" plea agreements, which "fall[] somewhere between a negotiated plea and an open plea[.]" ***Id.*** at 21. When faced with these agreements, "our task is to determine the effect of th[e] hybrid plea agreement on the right to challenge the discretionary aspects of [the] sentence." ***Id.*** "A hybrid plea agreement does not preclude appellate review of those discretionary aspects of the sentence that were not agreed upon in the negotiation process." ***Commonwealth v. Heaster***, 171 A.3d 268, 271 (Pa.Super. 2017).

Here, Harris and the Commonwealth agreed that the aggregate sentence would be no greater than 22 to 44 years in prison. On appeal, Harris claims the court abused its discretion because it failed to consider his rehabilitative needs and imposed an excessive sentence. The parties agreed to give the court discretion to impose an aggregate sentence anywhere below the cap, and Harris may challenge on appeal its exercise of that discretion. ***See Heaster***, 171 A.3d at 271 ("A hybrid plea agreement does not preclude appellate review of those discretionary aspects of the sentence that were not agreed upon in the negotiation process"); ***Brown***, 982 A.2d at 1019 (defendant could pursue appeal challenging exercise of discretion with respect to maximum term where he and Commonwealth agreed to a minimum term); ***Dalberto***, 648 A.2d at 21 (defendant could challenge the discretionary aspects of his sentence when he and the Commonwealth agreed that no more

than two of the charges would run consecutively, but he could not challenge the imposition of the two consecutive sentences).[3]

The court also found that, if Harris could appeal the sentence, it did not abuse its discretion when imposing the sentence. Trial Ct. Op. at 5-7.

"The right to appellate review of the discretionary aspects of a sentence is not absolute, and must be considered a petition for permission to appeal." **Commonwealth v. Conte**, 198 A.3d 1169, 1173 (Pa.Super. 2018). We must determine whether: "(1) the appeal is timely; (2) the appellant has preserved his issue; (3) his brief includes a concise statement of the reasons relied upon for allowance of an appeal with respect to the discretionary aspects of his sentence; and (4) the concise statement raises a substantial question whether the sentence is inappropriate under the Sentencing Code." **Commonwealth v. Green**, 204 A.3d 469, 488 (Pa.Super. 2019); *see also* Pa.R.A.P. 2119(f) (stating that an appellant who challenges the discretionary aspects of a

---

[3] **See also Commonwealth v. Lee**, No. 1762 EDA 2023, 2025 WL 1013435, at *3-4 (Pa.Super. Apr. 3, 2025) (unpublished mem.) (concluding defendant could appeal discretionary aspects of sentence where he and the Commonwealth had agreed to a "high/low sentence between 20-40 and 10-20"); **Commonwealth v. Howard**, No. 466 MDA 2023, 2024 WL 2153624, at *2 n.7 (Pa.Super. filed May 14, 2024) (finding appellant could appeal discretionary aspects of sentence not agreed upon where she entered a hybrid plea providing for a cap on the sentence); **Commonwealth v. Tipping**, No. 891 WDA 2018, 2019 WL 3992059, at *1-*2 (Pa.Super. Aug. 23, 2019) (unpublished mem.) (reviewing discretionary aspects of sentence where parties agreed to a cap on the minimum sentence). We may cite our unpublished decisions filed after May 1, 2019 for persuasive value. **See** 210 Pa. Code § 65.37(B). We find the foregoing decisions highly persuasive on this point.

sentence "shall set forth in a separate section of the brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence").

Here, Harris raised the issue in a post-sentence motion and in this timely appeal, and his brief includes a statement of the reasons relied upon for allowance of appeal. Further, his issue—that the court imposed an excessive and unreasonable sentence that did not account for his rehabilitative needs— raises a substantial question. *Commonwealth v. Caldwell*, 117 A.3d 763, 770 (Pa.Super. 2015) (*en banc*) (finding a substantial question was presented where appellant challenged "the imposition of his consecutive sentences as unduly excessive, together with [a] claim that the court failed to consider his rehabilitative needs . . . .").

Sentencing is within the discretion of the trial court and will not be disturbed absent an abuse of discretion. *Commonwealth v. Rominger*, 199 A.3d 964, 970 (Pa.Super. 2018). "An abuse of discretion occurs where the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will." *Id.* (internal quotation marks and citation omitted).

When the court fashions its sentence, it must consider "the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A. § 9721(b). Additionally, where the court had the benefit of a Pre-Sentence Investigation ("PSI") report, we may "assume the

sentencing court was aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." ***Commonwealth Griffin***, 65 A.3d 932, 937 (Pa.Super. 2013) (citation and internal quotation marks omitted).

Here, when imposing its sentence, the court considered Harris's rehabilitative needs, as well as the gravity of the offense and the need to protect the community. It considered the testimony and arguments from the sentencing hearing, as well as information in the PSI and mitigation reports. There is nothing in the record to suggest the court abused its discretion in imposing the 22-to-44-year sentence. This claim lacks merit.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/9/2026